UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SUZANNE M. FAIRBROTHER

                         Plaintiff,          12-CV-6321
            v.                               **DECISION
                                             AND ORDER**
PATRICK R. DONAHOE,
Postmaster General

                         Defendant,
_____

## INTRODUCTION

Plaintiff, Suzanne Fairbrother ("Fairbrother"), brings this action against the Postmaster General of the United States Postal Service pursuant to the Rehabilitation Act of 1973, (codified at 29 U.S.C. § 701 et. seq.)(the "Act") claiming that the Postal Service discriminated against her on the basis of a disability.[1] Specifically, plaintiff alleges that she was discriminated against for having a disability, was denied a reasonable accommodation for hypoglycemia, and was retaliated against for seeking a reasonable accommodation for her condition.

Defendant moves for summary judgement, contending that Plaintiff has failed to establish a prima facie case of

---

[1] Although the Complaint purports to bring all discrimination and retaliation claims under the Americans with Disabilities Act, the Postal Service is not an "employer" under the ADA, and therefore, is not subject to liability under that law. 42 U.S.C. § 12111(5)(B); Lamb v. Potter, 2008 WL 3539945 at fn. 1 (S.D.N.Y. Aug. 12, 2008).  Instead, the Postal Service is subject to liability for alleged disability discrimination pursuant to the Rehabilitation Act of 1973.  Accordingly, the Court construes plaintiff's claims as arising under the Rehabilitation Act.

discrimination or retaliation.   Plaintiff opposes the Defendant's motion.   For the reasons set forth below, I grant defendant's motion for summary judgment.

## BACKGROUND

The following facts are taken from the Plaintiff's Complaint (docket item 1), the Defendants' Local Rule 56(a) Statement of Facts (docket item 25), Plaintiff's Response to Defendant's Statement of Facts (docket item 29), and the Court's review of the entire record.   The facts set forth herein are uncontested except where noted.

Plaintiff Suzanne Fairbrother has been a mail carrier for the Postal Service since 1995.  Defendant's Statement of Facts (hereinafter "DSF") at ¶ 2.   She continues to be employed as a mail carrier in the Pittsford, New York branch of the Postal Service. DSF at ¶ 5.  In 1998, plaintiff was diagnosed with ulcerative colitis, and in 2002, she underwent surgery for removal of her large intestine.   DSF at ¶¶ 11, 12.   As a result of her surgery, plaintiff follows a restricted diet which requires her to eat smaller meals more often throughout the day. DSF at ¶¶ 13, 14.

In 2010, the Postal Service changed its policy with respect to lunch breaks taken by postal carriers.   Under the new policy, mail carriers were required to take their lunch break after they had sorted and loaded mail onto their trucks, and after they began delivering the mail.  DSF at ¶¶ 17, 18.   Prior to this change in policy, plaintiff routinely took her lunch break after sorting her

mail, but prior to leaving the post office.   DSF at ¶ 22. Plaintiff usually completed her mail sorting between 10:00 and 11:00 a.m., and took her lunch immediately thereafter.   DSF at ¶ 26.   In July, 2011, however, the post office installed a "flat sorter" machine at the Pittsford Post office, which significantly decreased the time it took to sort the mail.   DSF at ¶ 24, 25. Upon the installation of the flat sorter machine, plaintiff completed her mail sorting much earlier: between 8:30 a.m. and 9:00 a.m.   DSF at ¶ 27.   Thereafter, plaintiff typically took her lunch around 9:00 a.m.   DSF at ¶ 28.

Prior to the installation of the flat sorter, plaintiff had presented a note from her doctor stating that it was necessary for Fairbrother to eat her lunch prior to leaving the post office to deliver her mail.   DSF at ¶ 30, 31.   The doctor's note did not specify the time of day that plaintiff needed to eat her lunch, but simply that she needed to eat lunch to prevent symptoms of hypoglycemia.   DSF at ¶ 31.   After consulting with a physician, and inviting plaintiff's doctor to contact the consulting physician, the post office rejected plaintiff's request to eat lunch prior to leaving to deliver the mail, and instead proposed that plaintiff eat a snack prior to leaving, and then have lunch once she was out on her deliveries.   DSF at ¶¶ 38, 39, 41.   Despite the fact that the defendant had rejected her request to take lunch prior to leaving the postal facility, and that the defendant directed Fairbrother to eat her lunch while out on her deliveries,

Fairbrother nonetheless continued to eat lunch prior to leaving to deliver the mail. DSF at ¶ 43. Plaintiff admits that she disregarded her supervisor's order that she eat lunch while on deliveries, but claims that she was justified in doing so. Plaintiff's Counterstatement of facts ("PCF" at ¶ 16.

Plaintiff's supervisor, Cindy Bailey, ("Bailey) the Postmaster of the Pittsford office, asked Fairbrother to provide the post office with documentation establishing that plaintiff needed to eat her lunch at a specific time as a matter of medical necessity. DSF at ¶ 45. Thereafter, plaintiff presented a note from her doctor stating that she needed to eat lunch prior to going out on deliveries. DSF at ¶ 45. The note, however, did not state the time of day that plaintiff needed to eat, and did not state why plaintiff had to eat at the post office rather than when she was out on deliveries. DSF at ¶ 46. Plaintiff followed up with another doctor's note stating that although Fairbrother had tried snacking before leaving for deliveries, it did not prevent her from suffering symptoms of hypoglycemia. DSF at ¶ 48. Finally, on April 19, 2011, plaintiff's doctor submitted a note stating that plaintiff needed to eat her lunch between 10:00 and 11:00 a.m. DSF at ¶ 51. Based on this letter, and following the filing of a grievance by Fairbrother, the parties agreed that plaintiff would be allowed to eat her lunch between 10:00 and 11:00 a.m. regardless of where she was. DSF at ¶ 61. As part of the resolution of the

grievance, the Postal Service also agreed to pay the plaintiff $1,500.00.

On September 15, 2011, approximately one month after the grievance was resolved, a postal service supervisor, Tom Tisa ("Tisa") allegedly observed plaintiff eating her lunch in the post office prior to 10:00 a.m., and prior to starting her deliveries. DSF at ¶ 62.  Although defendant has submitted a warning letter issued by Tisa to plaintiff accusing her of eating lunch before 10:00 a.m., defendant has not submitted any sworn testimony from Tisa, nor has the defendant introduced any time records demonstrating that plaintiff took her lunch prior to 10:00 a.m. Plaintiff attempts to dispute defendant's allegation by stating that "she believes" that her time card would show that she was eating her lunch after 10:00 a.m., but she has failed to produce any evidence supporting her statement.  PCF at ¶ 22.  Plaintiff refused to stop eating lunch and begin her deliveries.  After arguing with Tisa, she left work for the day without making any deliveries. DSF at ¶¶ 64, 67, 71.

On September 20, 2011, plaintiff was again allegedly observed by Tisa eating lunch at the post office prior to 10:00.  DSF at ¶ 72. Defendant, however, has provided no documentary or testimonial evidence to support this claim.  Plaintiff again disputes this claim by stating that "she believes" she was eating after 10:00 a.m., but, like the defendant, has presented no evidence to support her contention.  PCF at ¶ 24.  According to the

defendant, plaintiff refused to stop eating her lunch, or take her lunch after 10:00 a.m.

On November 15, 2011, Tisa sent plaintiff a formal letter of warning regarding her conduct on September 15 and 20, 2011.  DSF at ¶ 78.  According to the defendant, plaintiff filed a grievance following her receipt of the warning, and the letter was reduced from a warning to an "official discussion." DSF at ¶ 79.

Following the lunch-time incidents, the Postal Service sent plaintiff to a doctor for a consultative exam.  DSF at ¶ 80. According to the examining doctor, there was no medical necessity for plaintiff to eat her lunch at the post office as opposed to on the road.  DSF at ¶ 81.  As a result, plaintiff was allowed to continue to eat her lunch between 10:00 and 11:00 a.m., regardless of her location.

According to the plaintiff, after the September incidents, the defendants began to target her in retaliation for exercising her right to an accommodation. PCF at ¶ 29.  She claims that on December 6, 2011, on her third day of a new route, Bailey accompanied her under the pretense of conducting a route inspection in accordance with postal guidelines, but failed to follow proper protocol for conducting such an examination. PCF at ¶ 30.  For example, during a route inspection, a supervisor is not allowed to critique or coach a carrier, however Bailey admitted to criticizing plaintiff six times in an eleven minute span. See October 24, 2012 Arbitration Determination of Arbitrator Jonathan

Klein (attached as Exhibit 19 to the Declaration of Michael S. Cerrone) at p. 16.   According to the defendant, Fairbrother became extremely frustrated with Bailey, and threw her keys at Bailey, hitting her on her thigh.  DSF at ¶ 87.  Plaintiff admits throwing keys, but claims that she threw the keys to the ground, not at Bailey, and that the keys did not hit Bailey. PCF at ¶ 31. According to the plaintiff, Bailey was harassing her instead of merely conducting an inspection in accordance with Postal Service guidelines. PCF at ¶ 30.  Indeed, the arbitrator who reinstated plaintiff's employment pursuant to plaintiff's grievance determined that "[c];early, Postmaster Bailey failed to comply with [postal regulations] during her observation of [Fairbrother]." See October 24, 2012 Arbitration Determination of Arbitrator Jonathan Klein, (attached as Exhibit 19 to the Declaration of Michael S. Cerrone) at pp. 16-17.  As a result of the key-throwing incident, the post office proposed terminating plaintiff's employment. DSF a ¶ 88. Plaintiff then filed a grievance against the Postal Service, and as a result of a hearing pursuant to binding arbitration, plaintiff's proposed termination was reduced to a seven-day suspension. Plaintiff continues to work for the Postal Service at the Pittsford, New York, branch.

## **DISCUSSION**

I.   <u>Standard for Summary Judgment</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant
is entitled to judgment as a matter of law." See Fed. R. Civ.
P. 56(a). Once the movant has met this burden, the burden shifts to
the nonmovant who must "come forward with evidence to allow a
reasonable jury to find in his favor." See Lizardo v. Denny's,
Inc., 270 F.3d 94, 101 (2d Cir.2001); Celotex Corp. v. Catrett, 477
U.S. 317, 325-27 (1986). The court must draw all factual
inferences, and view the factual assertions in materials such as
affidavits, exhibits, and depositions in the light most favorable
to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 255 (1986); Celotex Corp., 477 U.S. at 322. However, a
nonmovant benefits from such factual inferences "only if there is
a 'genuine' dispute as to those facts." See Scott v. Harris 550
U.S. 372 (2007).

II.   Plaintiff's Rehabilitation Act Claims for Discrimination

The Rehabilitation Act of 1973 provides in relevant part that
"no otherwise qualified individual in the United States . . .
shall, solely by reason of her or his disability, be excluded from
the participation in, be denied the benefits of, or be subjected to
discrimination . . . by the United States Postal Service.
29 U.S.C.A. § 794.  To state a claim for discrimination under the
Act, the plaintiff may allege either that an adverse action was
taken against her because of her disability, or that the defendant
failed to provide a reasonable accommodation for her disability.
To  establish a prima facie case of discrimination based on an

adverse action, a plaintiff must establish that she is a qualified individual with a handicap under the Act, that she is otherwise qualified to perform her job, and that adverse action was taken against her because of her handicap.  See Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 383 (2nd Cir., 1996).  To establish a claim for failure to accommodate, a plaintiff must demonstrate that "(1) his employer is subject to the Act; (2) he was "disabled" within the meaning of the Act; (3) he was qualified to perform essential functions of the job, with or without a reasonable accommodation; and (4) his employer had notice of the plaintiff's disability and failed to provide a reasonable accommodation."  Trobia v. Henderson, 315 F. Supp. 2d 322, 325-26 (W.D.N.Y. 2004) aff'd, 143 F. App'x 374 (2d Cir. 2005).  In the instant case, plaintiff alleges that she was both subjected to an adverse employment action, and that the Postal Service failed to accommodate her disability.

Plaintiff's claims for disability discrimination are analyzed under the well-recognized burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and later refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981) and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).  Under the McDonnell Douglas test, the plaintiff bears the burden proving a prima facie case of discrimination.  If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the defendant to state a legitimate, non-

discriminatory reason for taking the employment action at issue. Should the employer meet that burden, the burden of production then shifts back to the plaintiff to show that the reasons proffered by the employer were not the true reasons for the adverse employment action, but instead were a pretext for discrimination, and that discrimination was the real reason.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); St. Mary's Honor Center v. Hicks, 509 U.S. 502-06 (1993).

A.  Plaintiff has failed to establish a claim of discrimination based on Adverse Action

For purposes of the instant motion, defendant concedes that Fairbrother has stated a prima facie case for disability discrimination based on an adverse action. See Defendant's Reply Memorandum of Law at p. 2 ("the Postal Service, for the purposes of this motion, does not dispute that plaintiff can establish her prima facie case.")  Specifically, the defendant acknowledges that plaintiff is a qualified individual with a handicap under the Act, that she is otherwise qualified to perform her job, and that she has sufficiently alleged that adverse action was taken against her in the form of being reprimanded for allegedly eating lunch prior to 10:00 a.m. on two occasions, and having employment termination proceedings initiated against her after she threw her keys during an argument with a supervisor, was taken against her.  The defendant contends, however, that the adverse action taken against plaintiff was justified, and was not the result of any

discriminatory animus.  Specifically, the defendant contends that plaintiff was reprimanded because she was insubordinate and disrespectful when she was directed by Tisa to eat her lunch while out on deliveries on September 15 and 20, 2011, and that the termination proceedings were initiated because she later became involved in a verbal altercation with her supervisor Cynthia Bailey on December 6, 2001, during which she threw her keys.

I find that defendant's proffered reasons for taking adverse action against the plaintiff state legitimate, non-discriminatory reasons for taking such action.  I further find that Fairbrother has failed to rebut the explanations stated by the defendant.  The plaintiff admits that on September 15, 2011, after Tisa asked her to take her lunch while out on deliveries, plaintiff: refused to do so; told Tisa to "go ahead and write me up;" told him that "you guys lost that one. I have to take my lunch at 10:00 a.m. I don't care, you can just pay me another $1,500;" told Tisa to "do what ever you want with me;" and then left work for the day. DSF at ¶¶ 64, 65, 67, 70, and 71.  Based on this conduct, it was reasonable for the defendant to issue a letter of reprimand.

To rebut the defendant's proffered reason for issuing the letter of reprimand, Fairbrother must demonstrate that the reason offered by the defendant is pretextual.  McDonnell Douglas Corp., 411 U.S. at 804.  A plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence." <u>Texas Department</u>, 450 U.S. at 256.

Plaintiff, however, has failed to submit evidence from which a reasonable trier of fact could conclude that the defendant's explanation for its action was pretextual, and was actually motivated by disability discrimination.  The only evidence plaintiff relies on to rebut the defendant's explanation is the fact that the disciplinary action occurred shortly after she won her grievance.  Yet while the timing of an adverse action may support an *inference* of discrimination for purposes of pleading a prima facie case of discrimination, such evidence, as a matter of law, does not rebut a legitimate, non-discriminatory basis for taking such action.  <u>El Sayed v. Hilton Hotels Corp.</u>, 627 F.3d 931, 933 (2d Cir.2010)("temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext.").  Because plaintiff has provided no evidence that the defendant reprimanded her because she suffered from a disability or required an accommodation, I find that plaintiff has failed to rebut the defendant's legitimate explanation for issuing the letter of reprimand.  While the plaintiff claims that there is a question of fact as to whether or not she was actually eating lunch before or after 10:00 a.m. on the days in question, I find that the issue of whether or not she was eating her lunch before or after 10:00 a.m. is not material, in that plaintiff was reprimanded for her insubordinate behavior.  Even if plaintiff was eating her lunch

during the proper time period on those days, the Postal Service acted well within its authority by issuing a letter of warning for behavior it deemed insubordinate, irrespective of the underlying dispute.

Similarly, with respect to the adverse action of initiating termination proceedings against her, plaintiff has failed to rebut the defendant's legitimate, proffered reason for taking that action. While the defendant concedes that plaintiff has stated a prima facie case based on the initiation of termination proceedings, the Postal Service argues that its actions were justified because the plaintiff threw her keys during an argument with her supervisor, and was insubordinate. This explanation states a legitimate, non-discriminatory reason for taking such action.

Plaintiff, however, has failed to rebut the rationale offered by the Postal Service for the action taken against her.[2] Fairbrother claims that Bailey targeted her because she was upset that Fairbrother would not drop her discrimination charge against the post office. However, such a claim would not establish discrimination based on a disability, but instead could only be relevant to a claim of retaliation based on engaging in a protected

---

[2] Plaintiff devotes her entire legal argument in opposition to defendant's motion for summary judgment arguing that she has stated a prima facie case of discrimination, a point the defendant has conceded. Plaintiff simply does not address, nor attempt to rebut, the defendant's argument that it was justified in taking action against the plaintiff.

activity.   Moreover,   it   is   well   settled   that   speculative   and conclusory   allegations   of   discrimination   are   insufficient   to establish a case of discrimination or defeat a properly supported motion for summary judgment.  See, Wright v. Milton Paper Co., 2002 WL 482536, *8 (E.D.N.Y., March 26, 2002) (citing Stern v. Trustees of Columbia Univ., 131 F.3d 305, 312 (2d Cir.1997).  "A plaintiff cannot simply substitute utter speculation for the competent proof that would be necessary to permit rational inferences by a jury of discrimination or retaliation." Schupbach v. Shinseki, 905 F. Supp. 2d 422, 437 (E.D.N.Y. 2012).   Plaintiff has failed to submit any evidence from which a trier of fact could conclude that Bailey targeted her because she suffered from a disability, or that the postal service attempted to fire her because she suffered from a disability.   Accordingly, I find that plaintiff has failed to rebut the defendant's proffered, legitimate reason for attempting to terminate her employment.

B.   Plaintiff has failed to establish a Claim against the Defendant for Failure to Accommodate.

Plaintiff alleges that the defendant failed to accomodate her disability by not allowing her to eat her lunch prior to starting her deliveries.   It is undisputed, however, that the defendant accommodated plaintiff's need to regulate her blood sugar levels by allowing her to eat lunch between 10:00 a.m. and 11:00 a.m. regardless of where she was, and by allowing her to snack anytime.

Although plaintiff may have preferred to eat her lunch at the

postal facility rather than while out on deliveries. A plaintiff seeking a medical accommodation under the Rehabilitation Act is not entitled to any accommodation he or she seeks, but rather is entitled to a reasonable accommodation of the employer's choosing. "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." McElwee v. Cnty. of Orange, 700 F.3d 635, 641 (2d Cir. 2012). In the instant case, the record reveals that the defendant accommodated the plaintiff's request that she be allowed to eat lunch between 10:00 a.m. and 11:00 a.m. While plaintiff may have preferred to be allowed to eat lunch at the postal facility rather than on her route, plaintiff has failed to establish that there was any medical necessity that required her to eat at a particular location rather than at a particular time. Moreover, the existence of a question of fact as to whether or not plaintiff took her lunch before or after 10:00 a.m. on two occasions does not negate the fact that the defendant provided a reasonable accommodation to the plaintiff by formally entering into an agreement with her allowing her to eat lunch at the time she requested. There is no evidence in the record to suggest that the defendant attempted to prevent her from eating her lunch between 10:00 and 11:00 when it was clear that she was eating during that time frame. I therefore find that plaintiff has failed to establish a claim for failure to accommodate.

III. Plaintiff has failed to state a claim for Retaliation under the Rehabilitation Act

To state a claim of retaliation under the Rehabilitation Act, a plaintiff must demonstrate that she engaged in a protected activity that the employer knew of, that the employer took adverse action against the employee, "and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Sands v. Runyon, 28 F.3d 1323, 1331 (2nd Cir. 1994). Although the Rehabilitation Act does not specifically recognize retaliation as a prohibited act, the Department of Labor has promulgated a regulation recognizing retaliation as a prohibited activity, and the Second Circuit Court of Appeals has recognized the same. See 29 C.F.R. § 1614.101(b); Sands, 28 F.3d at 1331 n.1.

Fairbrother alleges that the defendant retaliated against her by issuing a letter of reprimand for eating lunch prior to 10:00 a.m. on two occasions, subjecting her to increased scrutiny, and attempting to terminate her employment all in retaliation for her filing grievance in June, 2011, and EEO complaints in April and November, 2011 against the Postal Service, and successfully obtaining a monetary settlement in her favor. See Plaintiff's Answers to Interrogatories at ¶ 9. Such claims establish a prima facie case of retaliation.

The defendant contends, however, that these actions taken against Fairbrother were justified, and that plaintiff has failed

to rebut the reasons offered by the Postal Service.  Defendant also asserts that the plaintiff has failed to establish that the Postal Service's actions were taken based on a retaliatory animus, and therefore, the plaintiff is unable to establish a claim for retaliation.

In support of its position that the actions taken by the Postal Service were justified, and based on a non-retaliatory motive, the defendant argues that the letter of reprimand issued by Tisa in November, 2011 was justified because plaintiff was "disrespectful" to Tisa when he approached her on September 15 and 20, 2011, to tell her that she could not eat her lunch at the postal facility.

Defendant's explanation states a legitimate, non-discriminatory reason for disciplining the plaintiff which Fairbrother has failed to rebut.  Plaintiff has offered no evidence other than the timing of the disciplinary letter in her attempt to establish that Tisa's actions were retaliatory.  It is well established, however, that "temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext." El Sayed, 627 F.3d at 933.  Plaintiff has provided no evidence that Tisa was motivated by a retaliatory animus against her, and therefore, I find that she has failed to state a claim of retaliation based on this incident.  See Abrams v. Dep't of Pub. Safety, 13-111-CV, 2014 WL 4191178 (2d Cir. Aug. 26, 2014)(affirming grant of summary judgment in favor of defendant in

discrimination action where plaintiff "alleged nothing beyond temporal proximity to establish pretext.").

With respect to plaintiff's claim that she was harassed by Bailey and that termination proceedings were brought against her in retaliation for exercising her rights under the Rehabilitation Act, I find that plaintiff has failed to rebut the defendant's proffered explanation for taking that action. The defendant states that it initiated termination proceedings because plaintiff was insubordinate during an argument with Bailey and because Fairbrother threw her keys during that argument. Such a rationale states a legitimate, non-retaliatory reason for taking adverse action against Fairbrother.

Plaintiff, however, has failed to rebut the defendant's evidence, and has failed to submit evidence from which a trier of fact could conclude that the defendant was motivated by a retaliatory animus. Plaintiff admits that she threw her keys during her argument with Bailey, and assuming that she did not throw her keys at Bailey, there is no dispute that she did throw her keys during the argument with her supervisor. The defendant considered the action to be serious enough to warrant termination of her employment, and although the plaintiff disagrees with the defendant's decision to terminate her following that episode, it is not for courts to determine the wisdom of an employment action, but instead to determine whether or not that action was motivated by discrimination or retaliation. <u>Darrell v. Con Edison</u>, 2012 WL

398488 at * 5 (S.D.N.Y. Feb. 7, 2012)("As a matter of law, this
Court will not sit as a "super-personnel department," second-
guessing the wisdom of employment decisions."(citing David v.
Children's Village, 132 Fed. Appx. 872, 873 (2d Cir.2005) ("[W]e do
not second-guess an employer's personnel decision so long as it is
based on something other than a prohibited ground.")).  Here,
plaintiff has provided no evidence upon which a trier of fact could
conclude that the postal service intended to retaliate.  Although
she claims that Bailey was mad at her for filing discrimination
complaints, there is no evidence in the record to support such a
claim, and plaintiff's conclusory allegations to that effect fail
as a matter of law to establish the defendant's motives.
Schupbach, 905 F. Supp. 2d at 437 (speculation as to a defendant's
motive cannot substitute for the competent proof "necessary to
permit rational inferences by a jury of discrimination or
retaliation."). Similarly, plaintiff's belief that termination was
too harsh a penalty for her conduct does not establish that the
defendant was motivated by a retaliatory animus.  In fact,
plaintiff claims that Bailey "started questioning everything I did
right after I handed in my [request for overtime]."  PCF at ¶ 30.
Such a claim suggests that Bailey was motivated by plaintiff's use
of overtime rather than a retaliatory motive for filing a claim of
discrimination.

Plaintiff contends that Bailey failed to follow Postal Service
guidelines when she conducted the route inspection that led to the

verbal confrontation between Fairbrother and Bailey. See October 24, 2012 Arbitration Determination of Arbitrator Jonathan Klein (attached as Exhibit 19 to the Declaration of Michael S. Cerrone) at pp 16-17; PCF at ¶ 30. Indeed, evidence submitted to Arbitrator Jonathan Klein ("Klein"), who arbitrated plaintiff's grievance over the proposed termination, suggests that Bailey improperly conducted the route inspection that precipitated the verbal altercation. However, the fact that Bailey may have improperly conducted the route inspection does not constitute evidence that Bailey was retaliating against Fairbrother for filing a discrimination complaint. It is uncontroverted that on the day of the route inspection, plaintiff was completing her third day on a newly designed route, and had requested overtime for each day she had been delivering mail on that route. Fairbrother testified that the purpose of going on the route with Bailey was to determine whether or not the route was too long, or needed to be modified. Deposition Testimony of Cynthia Bailey (attached as Exhibit 5 to the Declaration of Michael S. Cerrone) at pp 79-80. Although plaintiff attempts to controvert this testimony by claiming that she had never previously seen a supervisor go out on a route in December, or on the third day of a new job, (PCF at ¶ 27) such a claim does not refute the defendant's explanation of why the route inspection was conducted.

Finally, although not binding on this court, I note that plaintiff raised claims of retaliation in her grievance proceedings

challenging the termination of her employment.  The arbitrator deciding that grievance, acting on an evidentiary record similar to the record before this Court, determined that Fairbrother had failed to establish that her filing of discrimination complaints was a "motivational factor behind management's decision to perform an inspection of [Fairbrother's] route on December 6, 2011."  <u>See</u> October 24, 2012 Arbitration Determination of Arbitrator Jonathan Klein (attached as Exhibit 19 to the Declaration of Michael S. Cerrone) at pp 12-13.  Similarly, Klein found that the December 6, 2011 argument between Bailey and Fairbrother was "not connected in any manner to her medical condition and previously filed EEO claims . . . ."  <u>Id.</u> at p. 13.  Just as the record in that proceeding failed to support a finding of discrimination or retaliation, the record here fails to provide evidence from which a reasonable trier of fact could conclude that the defendant was motivated by a desire to retaliate against Fairbrother when it decided to conduct the route inspection, or initiate termination proceedings against her. Accordingly, I find that plaintiff's retaliation claim cannot go forward.

IV.  <u>Hostile work Environment</u>

In plaintiff's opposition to the defendant's motion for summary judgment, Fairbrother asserts, for the first time, a claim for a hostile work environment.  New claims, however, may only be asserted in an Amended Complaint, and may not be raised in a memorandum of law.  <u>E.E.O.C. v. Bloomberg L.P.</u>, 967 F. Supp. 2d

816, 884 (S.D.N.Y. 2013)("It is well-established that a plaintiff must plead her claims in her complaint . . . .")  In this case, the time to Amend the Complaint as of right has long passed, and plaintiff has not requested permission to amend the Complaint. Accordingly the court will not consider plaintiff's untimely claim of a hostile work environment.  Council For the Hearing Impaired Long Island, Inc. v. Ambach, 610 F. Supp. 1051, 1055 (E.D.N.Y. 1985)(because a "new claim cannot be properly interposed in a Reply Memorandum" there was no reason for court to address such claims).

## CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

  s/ Michael A. Telesca<br>
MICHAEL A. TELESCA<br>
United States District Judge

Dated:    Rochester, New York
          September 19, 2014